UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
AARON ABADI,                                      :

           Plaintiff,

                            :          OPINION AND ORDER
      -against-                                            21 Civ. 11073 (RA) (GWG)

                            :
NYU LANGONE HEALTH SYSTEM
et al.,                                                    :

           Defendants.           :
-----------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

      Pro se plaintiff Aaron Abadi has brought suit against defendants NYU Langone Health

System ("NYU Langone" or "NYU") and several NYU Langone employees for discrimination

on the basis of disability in violation of the Americans with Disabilities Act of 1990 ("ADA"),

see 42 U.S.C. §§ 12101 et seq., the New York State Human Rights Law, N.Y. Exec. Law. §§ 290

et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-

101 et seq. ("NYCHRL"), among other causes of action.  See Complaint, filed Dec. 23, 2021

(Docket # 2) ("Compl.").  Abadi now moves for leave to amend his complaint to add 17 new

defendants and to make additional allegations.[1]  For the reasons that follow below, the motion to

add the 17 new defendants is denied, but the plaintiff may file an amended complaint containing

the new factual allegations.

---

[1]  See Plaintiff's Motion for Leave to Add Defendants and Amend the Complaint, filed
May 14, 2023 (Docket # 47) ("Pl. Mem."); Proposed Amended Complaint, filed May 18, 2023
(Docket # 51) ("Prop. Compl."); Defendants' Memorandum of Law in Opposition, filed June 16,
2023 (Docket # 54) ("Def. Opp."); Plaintiffs' Response, filed June 21, 2023 (Docket # 55) ("Pl.
Reply").

## I.     BACKGROUND

### A.     The Proposed Amended Complaint

Because the resolution of Abadi's motion turns on whether his proposed amendments state a claim for relief, we accept "all factual allegations [in his proposed complaint] as true and draw [] all reasonable inferences in favor of the plaintiff."  Empire Merchs., LLC, 902 F.3d at 139 (quotation marks omitted); accord Fischkoff v. Iovance Biotherapeutics, Inc., 339 F. Supp. 3d 383, 385 (S.D.N.Y. 2018).

Abadi is a resident of New York City, see Prop. Compl. ¶ 1, who experiences "extreme discomfort" when he wears a mask due to a diagnosed "sensory processing disorder," id. ¶¶ 36-37. [2]  NYU Langone is an entity that owns and operates "hospitals, medical offices, and medical facilities in the New York area."  Id. ¶ 31.

On several occasions in 2021 and 2022, Abadi attempted to receive medical care at NYU Langone.  Id. ¶¶ 45-109.  Upon his arrival, various hospital employees and security guards denied him access, citing NYU Langone's policy at the time that required the wearing of a mask inside the facility as a result of the COVID-19 pandemic.  Id.

The first such occasion was on May 17, 2021, when Abadi attempted to attend an ophthalmology appointment with Dr. Vaidehi S. Dedania.  Id. ¶ 45.  An unnamed person stopped Abadi near the elevators when he tried to attend the appointment, and Abadi informed them that his medical condition created issues with wearing a mask.  Id. ¶ 47.  About fifteen minutes later, Seila Redoncic approached Abadi and informed him that "she spoke to senior leadership

---

[2]  The proposed amended complaint is unpaginated.  It contains paragraphs numbered from 1 to 109, appearing on ECF pages *1-*27, but then starts renumbering paragraphs from 1 to 171 beginning on ECF page *28.  Our citations herein are to the first set of paragraph numbers (that is on ECF pages *1 to *27) unless otherwise indicated.  ("*__" refers to the page assigned by the ECF system.)

consisting of Megan, Fran, and Andrew," who had told Redoncic that "NYU policy is to require a mask with no exceptions, even for disabilities," and that he had to wear a mask to enter. <u>Id.</u> ¶¶ 48-49. Abadi believes "Fran refers to [d]efendant, Fran Drummond, and Megan refers to [d]efendant Megan Hender." <u>Id.</u> ¶ 48. Abadi requested to "speak to a manager or supervisor" and several minutes later, Jessica Pfeffer "came out." <u>Id.</u> ¶ 48. Pfeffer "told [him] the same thing" and said she was "so sorry but senior leadership said that this is the policy here." <u>Id.</u> Redoncic called Abadi the next day and asked him to come back, and when he did, she escorted him to an exam room as he held a letter in front of his face in place of a mask. <u>Id.</u> ¶¶ 52-53.

A similar incident occurred on May 19, 2021, when Abadi had an appointment for a sonogram at NYU Radiology. <u>Id.</u> ¶¶ 55-68. Abadi called to request an accommodation to enter without wearing a mask and was informed by NYU Langone Assistant Director of Radiology, Cicil Chamakalayil, that per NYU Langone policy, Abadi could not enter without a mask. <u>Id.</u> ¶ 56.

Abadi called NYU Radiology again on June 4, 2021, to schedule an MRI and asked about the mask policy. <u>Id.</u> ¶¶ 58-59. Abadi spoke with someone named Anaris, who informed him that if he was unable to wear a mask during his MRI, they would be required to use anesthesia. <u>Id.</u> ¶ 60. Abadi proceeded to ask whether they would "put [him] on anesthesia on the street in order to get [him] into the building with a mask," and Anaris, who "seemed confused herself about her instructions," said Abadi "certainly [could not] enter the building without a mask." <u>Id.</u> ¶¶ 60-61. After more discussion, Anaris booked his appointment (without anesthesia) but asked him "to speak to Emi on Monday to address the mask issue, as that is what they told her." <u>Id.</u> "A day or two before the appointment," Dr. Yelena Karasina called Abadi and informed him that "Senior Leadership requested that [Abadi] cancel [his] appointment, as [he] cannot come in

without a mask." Id. ¶ 62.  Abadi got an MRI at a different hospital, but because it was taking too long to transfer the results from that hospital to NYU Langone, Abadi attempted to hand deliver the MRI results to his doctor at NYU Langone. Id. ¶¶ 62-63.  When Abadi made this attempt, Ana Barbecho was "manning the desk" and would not let him in. Id. ¶ 64.  Nathaniel Blugh, a patient relations employee, came down to meet Abadi, informed him of NYU Langone's mask policy, and delivered the MRI results on Abadi's behalf. Id. ¶ 65.  Abadi submitted a complaint to Michelle Moorehead, also of patient relations, who told him that if NYU Langone had received information about his disability, they would have made accommodations. Id. ¶ 67.

On June 9, 2021, Abadi arrived at the NYU Langone Preston Robert Tisch Center for Men's Health for an appointment with Dr. John G. Zampella, whereupon Abadi informed the office staff about his diagnosed condition. Id. ¶¶ 69-70.  Kadish, who is either a "doctor's assistant or nurse," told him that he had to leave and that the doctor would not see him. Id. ¶ 71.

On June 24, 2021, Abadi attempted to attend an appointment with Dr. Kirk Campbell. Id. ¶ 73.  Someone named Mina "and several others" refused to allow Abadi to see Campbell, telling him "that their policy is if you don't wear a mask, you cannot get medical care[,] and they will not make any exception." Id. ¶¶ 74-75.  An assistant regional director, Jace Casanovas, and two security guards "surrounded" Abadi in a room and "yelled" at him until police came and removed him from the building. Id. ¶¶ 75-77.

Sometime after these incidents, leadership at NYU Langone called Abadi's doctors and "yelled" at a doctor who had written him the letter about his sensory disorder condition. Id. ¶¶ 80-83.  Additionally, leadership "flagged" his "'[b]ehavioral' problem" in Abadi's internal files,

and called one of his doctors seeking to pressure the doctor into cancelling one of Abadi's

radiology appointments.  Id.

Following chest pain that continued after two emergency room visits in Connecticut on

August 11 and 12, 2022, see id. ¶ 88, Abadi tried to go to an NYU emergency room, see id. ¶ 92.

Upon arrival, a nurse named Alissa Celli and two security guards, Erik Dillon and Ambiori

Recio, refused to "get [him] a wheelchair."  Id. ¶¶ 93-97.  After explaining "that disability laws

require[d] them to allow [him] in without wearing a mask" and offering to hold one in front of

his face, they told him he had to wear the mask and that they would call the police to have him

removed.  Id. ¶¶ 98-99.  After twenty minutes of a "standoff," they got him a wheelchair and

allowed him in.  Id. ¶¶ 100-105.  Abadi held a mask and wheeled himself until he reached other

nurses, after which point the "rest of the staff took care of [him] well."  Id.  Celli recorded after

the incident: "CC: leg pain x 30min; refusing to wear a mask, making demands at start and

refusing to speak with anyone until demands are met; seen at hospital in CT today and came here

because he disagrees with their diagnosis."  Id. ¶ 106.

Additionally, the proposed complaint names several parties as defendants who are not

mentioned in the factual allegations.  These parties are: Regina Grinblat, NYU Langone "Senior

Director of Patient Experience," see id. ¶ 10; Nina Gonzalez, "the Practice Operations Manager

at NYU Langone at the Trinity location," see id. ¶ 13; Johanna Pizarro, who "works for NYU

Langone at Trinity Orthopedic," see id. ¶ 15; Harvard Protection Services, LLC ("Harvard

Protection"), which is an "outside contractor[] that provides "securitpersonnel [sic] to NYU

Langone," see id. ¶ 17; Jimmy Estevez, a security officer for Harvard Protection who "worked at

NYU Langone's facility," see id. ¶ 16; Maria Moschetta, an NYU Langone operations manager,

see id. ¶ 21; Christine Cha, "a Clinical Resource Nurse - Outpatient Respiratory/COVID-19

Testing Center at NYU Langone Health," see id. ¶ 22; and Michelle Miranda, an NYU Langone operations manager, see id. ¶ 23.

B.      Procedural History

Abadi filed a complaint with the New York State Division of Human Rights on September 21, 2021, but he states that his complaint was "withdrawn" and that the Division gave him authorization to file a federal lawsuit.  See Compl. ¶ 65; Prop. Compl. ¶ 86.  Abadi filed the original complaint in this case on December 23, 2021.  See Compl.  In the original complaint, Abadi named NYU Langone, Chamakalayil, Campbell, Barbecho, Zampella, Moorehead, and "numerous unnamed employees of NYU Langone" as defendants.  See id. at *1-3.  The original complaint raised many of the same allegations against NYU Langone and its employees over various incidents resulting from NYU Langone's masking policy, although it omits some details and incidents described in the proposed complaint.  Compare id. ¶¶ 14-65 with Prop. Compl. ¶¶ 31-109.

On May 14, 2023, Abadi filed the instant motion for leave "to add . . . seventeen defendants . . . and to amend the complaint."  See Pl. Mem.  Abadi did not attach a copy of the proposed complaint he sought leave to file, so the Court denied the motion.  See Order, filed May 16, 2023 (Docket # 50).  Abadi then filed his proposed complaint on May 18, 2023.  See Prop. Compl.

The defendants have treated the plaintiff's filings as if his motion to amend, see Pl. Mem., is still before the Court notwithstanding the Court's denial of the motion, see Order, filed May 16, 2023 (Docket # 50).  In light of plaintiff's pro se status, and the fact that he cured the main infirmity in his motion by filing the proposed amended complaint, we will treat plaintiff's motion to amend in the same way.

## II.   LEGAL STANDARD

### A.   Law Governing Motions for Leave to Amend

Rule 15(a) provides that a "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The policy behind this rule is that "[l]iberal amendment promotes judicial economy by making it possible to dispose of all contentions between parties in one lawsuit."  Bilt-Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc., 1990 WL 129970, at *1 (E.D.N.Y. Aug. 24, 1990) (citing JennAir Prods. v. Penn Ventilator, Inc., 283 F. Supp. 591, 594 (E.D. Pa. 1968)).  The decision to grant or deny leave to amend under Rule 15(a)(2) is within the trial court's discretion.  See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971) (citation omitted).  The court may deny leave to amend for "good reason," which normally involves an analysis of the four factors articulated in Foman v. Davis, 371 U.S. 178, 182 (1962): undue delay, bad faith, futility of amendment, or undue prejudice to the opposing party.  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citing Foman, 371 U.S. at 182).

"If the amendment seeks to add a party, Rule 21 of the Federal Rules of Civil Procedure, which allows addition of a party[,] . . . comes into play."  Shi Ming Chen v. Hunan Manor Enter., Inc., 437 F. Supp. 3d 361, 364 (S.D.N.Y. 2020) (quoting Soroof Trading Dev. Co. v. GE Microgen, Inc., 283 F.R.D. 142, 147 (S.D.N.Y. 2012)).  "However, that creates no additional obstacle, as the 'showing necessary under Rule 21 is the same as that required under Rule 15(a).'"  Id. (quoting Soroof Trading Dev. Co., 283 F.R.D. at 147).

B. <u>Pro Se Pleadings</u>

In reviewing the proposed complaint, we are mindful that "[a] document filed <u>pro se</u> is to be liberally construed, and a <u>pro se</u> complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted); <u>accord</u> <u>McPherson v. Coombe</u>, 174 F.3d 276, 280 (2d Cir. 1999) (a <u>pro se</u> party's pleadings should be construed liberally and interpreted "to raise the strongest arguments that they suggest") (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)).  However, even <u>pro se</u> pleadings must contain factual allegations that "raise a right to relief above the speculative level." <u>Dawkins v. Gonyea</u>, 646 F. Supp. 2d 594, 603 (S.D.N.Y. 2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

III.   <u>DISCUSSION</u>

Defendants oppose the motion for leave to amend on the grounds that the proposed amendments would be futile because the proposed complaint does not (1) state a claim with respect to any of the proposed new defendants, and (2) does not otherwise contain sufficient matter to withstand a motion to dismiss under Rule 12(b)(6).  <u>See</u> Def. Opp. at 3-5, 9-11, 17-21.[3]

"Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." <u>Empire Merchs., LLC v. Reliable Churchill LLLP</u>, 902 F.3d 132, 139 (2d Cir. 2018).  In examining the proposed amended complaint, we ignore the paragraphs that make allegations against all or some defendants in an undifferentiated manner as a group, including

---

[3] Defendants also raise mootness as to one claim.  <u>See</u> Def. Opp. at 16-17.  It is not necessary to consider this ground in light of our ruling that the amended complaint does not state a claim as to the proposed new defendants.  <u>See</u> section III.B.

those with conclusory allegations of conspiracy.  See, e.g., Appalachian Enters., Inc. v. ePayment Sols., Ltd., 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004) ("A plaintiff fails to satisfy [R]ule 8, where the complaint lumps all the defendants together and fails to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong.") (internal quotation marks and alterations omitted); Stutts v. De Dietrich Grp., 2006 WL 1867060, at *14 (E.D.N.Y. June 30, 2006) ("Conspiracy claims premised upon conclusory, vague or general allegations will not withstand a motion to dismiss.") (citation and internal punctuation omitted).

Both the original and proposed amended complaints allege the same fifteen causes of actions.  It is unclear whether Abadi intends to bring all fifteen causes of action against each of the proposed seventeen defendants and it is obvious that some claims could not relate to individual defendants.  See, e.g., Prop. Compl. at *41 (alleging "[d]iscrimination under a program receiving federal funds" pursuant to 29 U.S.C. § 794(a)).

A.    Defendants about Whom the Proposed Complaint Alleges Nothing

The proposed complaint names a number of defendants not listed in the original complaint and makes no allegations regarding any of them.  These proposed defendants are: Regina Grinblat, Nina Gonzalez, Johanna Pizarro, Jimmy Estevez, Maria Moschetta, Christine Cha, Michelle Miranda, and Harvard Protection.  No further analysis is required to conclude that the motion for leave to add these defendants must be denied.  See, e.g., Myers v. City of New York, 2012 WL 3776707, at *3 (S.D.N.Y. Aug. 29, 2012) (dismissing action against party where "her name appears nowhere in the Complaint" but is only listed in the caption and in the list of defendants), aff'd, 529 F. App'x 105 (2d Cir. 2013); accord Dove v. Fordham U., 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) ("[W]here the complaint names a defendant in the caption but contains

no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.") (citation omitted), aff'd, 210 F.3d 354 (2d Cir. 2000).

B.    Remaining Additional Proposed New Defendants

We now turn to examine the causes of actions as to the remaining proposed new defendants, all of whom are individuals.

1.    ADA Claims

Abadi seeks to assert ADA disability discrimination claims against the proposed defendants. See Prop. Compl. at *29-40 (Count One). Defendants argue that these claims cannot be asserted against the individual defendants because Abadi fails to allege that any of these defendants "own, lease (or lease to), or operate a place of public accommodation." Def. Opp. at 10 (internal alterations and quotation marks omitted).

"To state a claim under Title III of the ADA, a plaintiff must allege that '(1) she is disabled within the meaning of the ADA; (2) defendants own, lease, or operate a place of public accommodation; and (3) defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide.'" Thorne v. Bos. Mkt. Corp., 469 F. Supp. 3d 130, 139 (S.D.N.Y. 2020) (quoting Wu v. Jensen-Lewis Co., 345 F. Supp. 438, 442 (S.D.N.Y. 2018)). "[T]he question of whether a person is a proper defendant under the ADA turns [] on . . . whether the defendant owns, leases, or operates a place of public accommodation within the meaning of the ADA." Coddington v. Adelphi University, 45 F. Supp. 2d 211, 215 (E.D.N.Y.1999) (emphasis removed); accord Berby v. ALJAC LLC, 954 F. Supp. 2d 173, 178 (E.D.N.Y. 2013). Because there is no allegation here that the individual defendants leased or owned the NYU facility, we focus on the word "operate." To "operate" a place of public

accommodation "means to put or keep in operation, to control or direct the functioning of, or to conduct the affairs of, or manage."  Berby, 954 F. Supp. 2d at 178 (internal quotation marks omitted).  While a person "in a position of authority and having the power and discretion to perform potentially discriminatory acts" has been interpreted to "operate" the public accommodation, "courts have been reluctant to hold individual employees who are not policy makers liable under the ADA."  Coddington, 45 F. Supp. 2d at 215.

In Coddington, the court reviewed case law surrounding ADA public accommodation cases and concluded that where an institution has a potentially discriminatory policy, the institution is the proper defendant and that "[e]ven assuming . . . that the Individual Defendants were responsible for making decisions regarding disabled [persons]," such facts would be insufficient alone to "require a holding that personal liability follows."  Id. at 216.  Coddington noted that it was "difficult to believe that Congress intended to impose personal liability upon every person that has made a decision regarding" a disabled person.  Id.

The complaint does not plausibly allege that any of the individual defendants "operate" NYU Langone.  The vast majority of allegations regarding individuals involve employees of NYU Langone or security guards who informed Abadi of NYU Langone's mask policy and took steps to follow the directives they were given as to that policy.  The remaining allegations are that certain individuals — specifically, Fran Drummond and Megan Hender — were consulted as superiors regarding enforcement of NYU's policy.  See Prop. Compl. ¶¶ 47-48.  But nothing in the complaint shows that they "operated" the facility by being policymakers — i.e., those that instituted the masking policy.  Therefore, the assertion of ADA claims against any of the individual defendants would be futile.  See Coddington, 45 F. Supp. 2d at 217 ("Where, as here,

plaintiff seeks relief based upon discrimination allegedly practiced by an . . . institution, it is the institution that has the power to make any accommodations required by law.").

2.      Retaliation

Abadi's proposed complaint seeks to make a claim regarding "[r]etaliation or coercion" in violation of the ADA.  See Prop. Compl. at *40-41 (Count Two).  Abadi refers to the acts of "[s]enior leadership and other defendants," without specifying who these people are and does not otherwise indicate against whom he seeks to make a retaliation claim against.  Id.  The only factual allegation in the proposed complaint that may reflect a form of retaliation or coercion is related to "[s]enior leadership and other defendants [] calling and harassing [p]laintiff's doctors, to discourage them and yell at them for giving the letter to the [p]laintiff and for telling the [p]lainitff that he does not have to wear a mask, causing a serious strain in the relationship with his doctors and a loss of the ability to fully trust his medical doctors." Id. at *40-41; see also id. ¶ 80.  However, Abadi never indicates the defendants responsible for this alleged retaliation by "senior leadership."  Thus, the individual defendants cannot be liable for this claim.

3.      NYSHRL and NYCHRL Discrimination Claims

Abadi seeks to state claims against the proposed defendants under the NYSHRL and NYCHRL.  See Prop. Compl. at *61-66.  There are four causes of action alleged under these statutes.  Two of the causes of action allege disability discrimination, see Prop. Compl. at *61-62 (Count Eight); id. at *63-64 (Count Ten), one relates to NYCHRL's cooperative dialogue requirement, see id. at *62-63 (Count Nine), and one relates to NYCHRL's prohibition on the "sending" of discriminatory notices, see id. at *65-66 (Count Eleven).  Defendants argue that Abadi cannot state a claim against any of the proposed defendants because they are not "owner[s] of a place or provider of public accommodation."  See Def. Opp. at 19.

Unlike the ADA, the NYSHRL and NYCHRL provide that causes of action can be made out against an "agent or employee" of a place of public accommodation.  See NYSHRL § 296(2)(a); NYCHRL § 8-107(4).  NYSHRL section 296(2)(a) provides that "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny . . . any of the accommodations, advantages, facilities or privileges thereof . . . ."  Similarly, the NYCHRL provides that it "shall be unlawful discriminatory practice for any . . . agent or employee of any place or provider of public accommodation" "[b]ecause of any person's actual or perceived . . . disability . . ., directly or indirectly" "[t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation."  NYCHRL §§ 8-107(4)-(4)(1)(a).

Both the NYSHRL and NYCHRL distinguish disability discrimination from other forms of discrimination listed — such as race and gender — in that the statutes provide that it is a discriminatory practice to "refus[e]" or "not to provide" a reasonable accommodation.  See NYSHRL § 296(2)(c)(i) (a discriminatory practice includes "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities . . . ."); NYCHRL § 8-107(15)(a) ("[I]t is an unlawful discriminatory practice for any person prohibited by the provisions of this section from discriminating on the basis of disability not to provide a reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question . . . .").  In other words, a policy of denying service to a person with a disability

is legally permissible where no reasonable accommodation can be made.  Thus, when it comes to providing services, the statute is violated when the defendant fails to grant an accommodation where it is reasonable to do so.  See Roberman v. Alamo Drafthouse Cinemas Holdings, LLC, 67 Misc. 3d 182, 184-87 (N.Y. Sup. Ct. 2020) ("In light of the court's finding that plaintiff failed to establish that defendant did not provide her with a reasonable accommodation, her NYCHRL claim under the disparate treatment theory[, NYCHRL § 8-107(4),] fails."); see generally Van Vorst v. Lutheran Healthcare, 2021 WL 6101474, at *2 n.6 (2d Cir. Dec. 22, 2021) (rejecting strict liability under NYCHRL § 8-107(15), noting that the "cooperative dialogue" provision suggests that what is "'reasonable' and required by the statute is appropriately determined on an individual basis").

The complaint here does not plausibly allege that NYU Langone's policy of requiring masks — considered by itself — discriminated against persons with disabilities.  Thus, this is not a case where an institution had a policy of not serving people with disabilities or a certain kind of disability — say, blind people or deaf people.  What violated the statute, if anything did, was the failure to take reasonable steps to accommodate plaintiff's alleged disability.  See NYSHRL § 296(2)(c)(i); NYCHRL § 8-107(15)(a).

While there are differences between the ADA, NYSHRL, and NYCHRL, "courts apply a similar analysis to reasonable accommodation claims under the ADA, . . ., NYSHRL, and NYCHRL."  Pinckney v. Carroll, 2019 WL 6619484, at *6 (S.D.N.Y. Dec. 4, 2019); accord Liboy v. Russ, 2023 WL 6386889, at *10 (S.D.N.Y. Sept. 29, 2023).  Both the NYSHRL and NYCHRL provide definitions of "reasonable accommodation" that suggest the statutes contemplate that the decisions to grant a reasonable accommodation may exist at the higher levels of leadership or with the institution itself.  In the NYCHRL context, a reasonable

accommodation is one that does "not cause undue hardship in the conduct of the <u>covered entity's business</u>."  NYCHRL § 8-102 (emphasis added).  The New York City Commission on Human Rights has considered factors appearing in related provisions to apply to public accommodations cases.  <u>See</u> <u>In re Comm'n on Hum. Rts. ex rel. Stamm v. E & E Bagels, Inc.</u>, 2016 WL 1644879, at *5 (N.Y.C. Comm'n Hum. Rts. Apr. 20, 2016) (applying factors in the NYCHRL §§ 8-107(4), (15) contexts).  These factors include "[t]he nature and cost of the accommodation," "[t]he overall financial resources of the covered entity," and "[t]he type of operation or operations of the covered entity, including the composition, structure and functions of the workforce of such entity."  NYCHRL § 8-102; <u>accord</u> <u>Bronx Independent Living Services v. Metropolitan Transportation Authority</u>, 2021 WL 1177740, at *19 (S.D.N.Y. Mar. 29, 2021) ("Factors to be considered in establishing an undue burden under the NYCHRL include the cost of the accommodation, the facility's size and resources, and the type of operations at the facility.") (internal quotation marks and alterations omitted).  Similarly, the NYSHRL provides that a reasonable accommodation should be provided "unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations."  NYSHRL § 296(2)(c)(i).  While the statute itself does not provide factors for conducting this evaluation, similar language in the ADA context, <u>see</u> 42 U.S.C. § 12182(b)(2)(A)(ii), has been held to implicate organizational interests.  <u>See</u> <u>Staron v. McDonald's Corp.</u>, 51 F.3d 353, 356 (2d Cir. 1995) (the "reasonableness" of an accommodation requires consideration of "among other factors, the effectiveness of the modification in light of the nature of the disability in question and <u>the cost to the organization that would implement it</u>") (emphasis added).  In other words, the NYSHRL and NYCHRL view the question of whether an accommodation is reasonable to implicate an analysis of costs to the institution.

We consider this principle in combination with the principle that to hold an individual liable under the NYSHRL or the NYCHRL, the plaintiff must show that the individual was <u>personally involved</u> in engaging in discriminatory acts.  See <u>Cardwell v. Davis Polk & Wardwell LLP</u>, 2021 WL 4434935, at *24 n.13 (S.D.N.Y. Sept. 23, 2021) ("[T]he NYSHRL, and the NYCHRL all require a plaintiff to allege that a defendant was personally involved in the discrimination."); <u>see generally</u> <u>Plasencia v. City of New York Dept. of Educ.</u>, 2023 WL 6161928, at *3 (S.D.N.Y. Sept. 21, 2023) ("To make out a claim against an individual defendant under the [NY]SHRL . . ., a plaintiff must . . . show direct, personal involvement in discriminatory conduct.") (internal quotation marks omitted); <u>Kirkland-Hudson v. Mt. Vernon City Sch. Dist.</u>, 2023 WL 2691622, at *30 (S.D.N.Y. Mar. 29, 2023) ("Under the NYSHRL . . ., individual liability . . . requires personal involvement of a defendant.") (internal quotation marks omitted).  Putting these two principles together, we conclude that an employee of NYU Langone could only be individually liable for the disability discrimination alleged here if the complaint plausibly alleged that the employee was personally involved in making the decision not to grant plaintiff a reasonable accommodation on behalf of NYU Langone.[4]

The proposed complaint lacks factual allegations showing that the proposed defendants were personally involved in engaging in discriminatory conduct: that is, the failure to allow plaintiff the accommodation he sought regarding his mask.  This conclusion is most obvious as to Jace Casanovas, Nathaniel Blugh, Ambiori Recio, Erik Dillon, and Alissa Celli as the complaint suggests only that they were carrying out the existing NYU Langone policy.  See

---

[4] There are no allegations as to any defendant regarding their responsibilities for engaging in any "cooperative dialogue" requirement or that they were personally involved in "sending" any notices that violate the statute.  <u>See</u> Prop. Compl. at *62-63, *65-66. Accordingly, we do not discuss these claims further.

Prop. Compl. ¶¶ 75-76 (Jace Casanovas "lectured" plaintiff while waiting for the police to arrive and told plaintiff that "in addition to the Hospital policy issue, the Doctor refuse[d] to see [plaintiff] without a mask"); id. ¶ 65 (Nathaniel Blugh delivered plaintiff's test results to his physician and informed him of the masking policy); id. ¶¶ 94-96 (Ambiori Recio, a security guard, "was trying to be nice" but ultimately did not get plaintiff a wheelchair after nurse Alissa Celli had told another security guard not to get one for plaintiff); id. ¶ 93 (Erik Dillon directed plaintiff to nurse Alissa Celli); id. ¶¶ 89-103 (while Alissa Celli caused a delay in getting plaintiff a wheelchair, which he needed because his leg pain made it difficult for him to stand and discuss the mask policy, plaintiff was ultimately given an accommodation and allowed to "hold[] the mask in front of [his] face, and not wear[] the straps around [his] ears").

The remaining four proposed defendants, Fran Drummond, Megan Hender, Seila Radoncic, and Jessica Pfeffer, pose a closer question, but the complaint still does not show personal involvement of these defendants in the decision to deny plaintiff the accommodation he sought — as opposed to the mere implementation of the NYU Langone policy. Abadi alleges that upon a visit to NYU Langone, he was stopped by an unnamed person and told he was not allowed to enter without a mask. See Prop. Compl. ¶ 47. After waiting for fifteen minutes, Radoncic "came out and told [Abadi] that [he] [could not] come in without a mask." Id. ¶ 48. Radoncic explained that "she spoke to senior leadership, consisting of Megan [Hender], Fran [Drummond], and Andrew" and "[t]hey all concurred that NYU policy is to require a mask with no exceptions, even for disabilities." Id. Abadi then requested to speak with "a manager or supervisor," and several minutes later, Pfeffer "came out" and indicated she was "so sorry but senior leadership said that this is the policy." Id. ¶ 50.

While the complaint plausibly alleges that these four defendants had supervisory or

management roles, the allegations do not show that any of these defendants actually had the power to grant a reasonable accommodation in the face of their employer's policy.  In the end, the complaint requires us to speculate as to what defendants' responsibilities were with regard to deviations from the NYU Langone policy on masks, and whether defendants personally had the authority to grant plaintiff an accommodation that would allow him to obtain medical services without a mask.  As a result, the proposed complaint does not show that these individuals are liable under the NYSHRL or NYCHRL for disability discrimination.  See Walker v. NYS Just. Ctr. for Prot. of People with Special Needs, 493 F. Supp. 3d 239, 250 (S.D.N.Y. 2020) ("pure[] speculat[ion] . . . cannot form the basis for alleging" a defendant's personal involvement).

4.     Conspiracy and Neglect

The proposed complaint accuses "[a]ll the Defendants" of conspiring to interfere with Abadi's civil rights pursuant to 42 U.S.C. § 1985, see Prop. Compl. at *46-58 (Count Six), and of neglecting to prevent this conspiracy pursuant to 42 U.S.C. § 1986, see id. at *58-61 (Count Seven).

The proposed complaint does not state a claim against any of the additional defendants under section 1985 for various reasons, including the fact that the proposed complaint fails to "show that there was 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'"  See Benzinger v. NYSARC, Inc. New York City Chapter, 385 F. Supp. 3d 224, 236 (S.D.N.Y. 2019) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).  More obviously, the proposed complaint fails to "'provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end[,]' along with 'some details of time and place and the alleged effects of the conspiracy.'"  Id. (quoting Romer v. Morgenthau, 119 F. Supp. 2d 346, 363

(S.D.N.Y. 2000)).  There are simply no allegations on this score.  For similar reasons, any claim

of "aiding and abetting" such violations, see Prop. Compl. *53, must also fail.

A "claim under 42 U.S.C. § 1986 for failure to prevent the violation of a person's civil

rights may not exist absent a viable section 1985 claim."  Rizk v. City of New York, 462 F.

Supp. 3d 203, 227 (E.D.N.Y. 2020) (quoting Faiaz v. Colgate Univ., 64 F. Supp. 3d 336, 356

(N.D.N.Y. 2014)).  Because the proposed complaint fails to state an underlying conspiracy

claim, the addition of a claim that the proposed additional defendants had knowledge of a section

1985 conspiracy and, "having power to prevent or aid in preventing the commission of the

same," neglected to stop that conspiracy is also futile.  See 42 U.S.C. § 1986.

### 5. New York State Patients' Bill of Rights

Abadi alleges several causes of action arising out of the New York State Patients' Bill of

Rights contained in the New York Administrative Code.  See Prop. Compl. at *66-68 (Count

Twelve, Thirteen and Fourteen).  While the Patients' Bill of Rights "does not appear to give rise

to a private right of action," Walter v. NYC Health Hosp. Corp., 2005 WL 324242, at *3

(S.D.N.Y. Feb. 9, 2005); see also Vaughn v. Ryan Health Care Center, 2022 WL 673607, at *4

(S.D.N.Y. Mar. 7, 2022) ("[S]tate and federal Patients' Bills of Rights generally do not create

enforceable federal rights."), even if it did, such a claim could only be made out against NYU

Langone, not against the proposed new defendants.  Abadi cites three provisions of the "New

York State Patient Bill of Rights" in Counts Twelve, Thirteen, and Fourteen.  See Prop. Compl.

at *66-68.  The references are either to 10 N.Y.C.R.R. § 405.7(b), which explicitly applies to

hospitals, not individual employees, See 10 N.Y.C.R.R. § 405.7(b) ("Hospital responsibilities.

The hospital shall afford to each patient the right to: . . . .") (emphasis in original); see also 10

N.Y.C.R.R. § 405.7 ("The hospital shall ensure . . . ."), or to 10 N.Y.C.R.R. § 751.9, which refers

to statements "operator[s]" shall "prominently post[] in patient care areas," see 10 N.Y.C.R.R. §
751.9(b) ("Such statement shall include the patients' rights to . . . be treated with consideration,
respect and dignity including privacy in treatment."). As the Court is "unable to construe any
allegations contained in plaintiff's amended complaint to plausibly suggest" that the proposed
defendants may be liable under causes of action created by the New York State Patients' Bill of
Rights, the amendment would be futile. Cosby v. Russell, 2012 WL 7678160, at *11 (N.D.N.Y.
Nov. 20, 2012).

6. Other Claims

As to the only remaining causes of action, either there is no indication Abadi seeks to
raise them against the new defendants or the claims lack merit. Counts Three and Four are
consistent only with claims brought against NYU Langone, not individual defendants. See Prop.
Compl. at *41-44 (alleging discrimination by "a program receiving federal funds" in violation of
29 U.S.C. § 794(a)); id. at *44-45 (alleging violations of the Affordable Care Act since
"[d]efendant is a recipient of significant funds from the federal government"). Similarly, the
proposed complaint's allegation of medical malpractice could apply only to NYU Langone and
Abadi's doctors (who are already defendants in this case), not to any of the proposed additional
defendants (none of whom are alleged to have provided him medical care). See id. at *68-69
(Count Fifteen). Finally, as to Abadi's claim for violations of HIPAA (Count Five), the
complaint fails to specify what information was wrongfully disclosed and who was responsible
for the disclosure. See id. at *45-46.

Accordingly, the amendments to add any new defendants for purposes of holding them
liable under the remaining causes of action would be futile.

C.    <u>Miscellaneous Proposed Allegations</u>

Defendants have made various other arguments, including challenges to the request for injunctive relief as moot.  <u>See</u> Def. Mem. 16-17.  Having agreed that the new defendants cannot be added, it is not necessary to address any of defendants' other arguments that may address the merits of the complaint — particularly since the consideration of the "futility" of a proposed amendment to a pleading is left to a court's "discretion."  <u>Grace v. Rosenstock</u>, 228 F.3d 40, 53 (2d Cir. 2000).

We will thus allow plaintiff to file an amended complaint with all of the existing and newly proposed allegations.  Obviously, defendants are free to raise any arguments as to the infirmity of the proposed complaint (on any ground) in a dispositive motion at an appropriate time.

<u>Conclusion</u>

For the above reasons, the motion to file an amended complaint (Docket # 47) is granted in part and denied in part.  Plaintiff may file an amended complaint that matches the proposed amended complaint as long as he omits naming the 17 new proposed defendants in the caption and in the portion of the complaint identifying the defendants (Prop. Compl. ¶¶ 9-25; <u>id.</u> at *77-81).  Any such amended complaint shall be filed within 7 days of the date of this decision.

Dated: December 7, 2023
         New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge